UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| ALAN GABRIEL La TORRE MARADIEGUE and LUISA STEPHANY RIQUERO NAZARIO, Individually, and as Parents and Next Friend of MARCO GABRIEL La TORRE RIQUERO, Deceased,<br>           Plaintiffs,<br><br>vs.<br><br>ST. MARY'S HEALTH, INC., d/b/a ASCENSION ST. VINCENT EVANSVILLE,<br>           Defendant. | CASE NO. 3:23-cv-6 |

## COMPLAINT

Plaintiffs, Alan Gabriel La Torre Maradiegue and Luisa Stephany Riquero Nazario, Individually, and as Parents and Next Friend of Marco Gabriel La Torre Riquero, deceased, by counsel, for their Complaint against Defendant, St. Mary's Health, Inc. d/b/a Ascension St. Vincent Evansville, state as follows:

## JURISDICTION

1.  This action is brought pursuant to the provisions of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), codified at 42 U.S.C. § 1395dd.  As such, this Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate in this judicial district, pursuant to 28 U.S.C. § 1391(b), for the reasons that Defendant, St. Mary's Health, Inc. d/b/a Ascension St. Vincent Evansville, is an Indiana corporation with its principal offices located in this judicial district and a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## THE PARTIES

3. Marco Gabriel La Torre Riquero ("Marco"), now deceased, was at all times material residing in Evansville, Vanderburgh County, Indiana.

4. Gabriel La Torre Maradiegue ("Marco's father"), and Luisa Stephany Riquero Nazario ("Marco's mother"), were the natural parents of Marco and were at all times material to these proceedings legally in the United States from Peru (political asylum pending), and were residing in Evansville, Vanderburgh County, Indiana.

5. St. Mary's Health, Inc. d/b/a Ascension St. Vincent Evansville ("St. Vincent"), is a corporation organized and existing under the laws of the state of Indiana and having its principal place of business located in Evansville, Indiana.

## FACTUAL ALLEGATIONS

6.      St. Vincent is a hospital located in Evansville, Indiana, that has an Emergency Department ("ED") and is subject to the requirements of the Emergency Medical Treatment and Active Labor Act (hereinafter "EMTALA") (42 U.S.C. § 1395dd and its regulations at 42 C.F.R. § 489.24).

### Sunday September 18, 2022 – St. Vincent Urgent Care

7.      On Sunday morning September 18, 2022, Marco, age 8, born December 13, 2013, was taken by his mother and father to the St. Vincent Urgent Care – Epworth, located in Newburgh, Warrick County, Indiana ("the St. Vincent Urgent Care").

8.      The St. Vincent Urgent Care charted Marco's Chief Complaint as four days of headache, abdominal pain, and vomiting.  His mother reported fever and that it hurts Marco to stand.  Marco's mother had been "rotating Tylenol/ibuprofen without improvement."  Marco's charted history does not indicate when he last received Tylenol/ibuprofen.  Marco had a fever of 100 F° charted by the Nurse Practitioner who saw Marco while he was at the St. Vincent Urgent Care.

9.      Marco tested negative for Flu and SARS (COVID) at the St. Vincent Urgent Care.  The Nurse Practitioner charted that Marco was acutely ill, and she instructed the parents to "Go immediately to the E.D. for further evaluation and treatment" including an MRI.

**Sunday September 18, 2022 – St. Vincent Emergency Department (ED)**

10. Marco's parents took him directly to the St. Vincent ED.

11. Marco was seen in the St. Vincent ED, again by a Nurse Practitioner. He charted that Marco had been seen that morning at the St. Vincent Urgent Care, and that according to Marco's parents, Marco had been sent to the St. Vincent ED for further evaluation including an MRI, though he noted that Marco's parents were not sure why an MRI was needed. The St. Vincent ED Nurse Practitioner charted severe headaches, fever, vomiting, and pain.

12. There was no communication with the St. Vincent Urgent Care or review of the St. Vincent Urgent Care medical records by the St. Vincent ED. The timing of Marco's most recent fever reducing medications was not charted by the ED.

13. The Nurse Practitioner checked vitals and noted that Marco was negative for influenza and COVID per the St. Vincent Urgent Care tests reported by Marco's parents, and that Marco was negative for strep.

14. Marco's acute symptoms, including several days of severe headache, abdominal pain, pain standing, fever, and vomiting were consistent with critical, life-threatening emergency medical conditions, including encephalitis and meningitis.

15. No appropriate medical screening examination was ever performed on Marco by the St. Vincent ED on Sunday September 18, 2022, to determine whether an emergency medical condition existed.

16. Instead, the Nurse Practitioner recommended pain relievers in the form of Tylenol and ibuprofen and discharged Marco. Marco's parents were told to see a pediatrician.

17. Marco's parents had asked repeatedly for a doctor to examine Marco, but the St. Vincent doctor responsible for the examination did not see Marco on that Sunday, and instead signed off as agreeing with "the documentation and the treatment plan."

18. Marco's parents are Peruvian and primarily Spanish speaking, but no interpreter was provided by St. Vincent. The language barriers also underscored the need for an appropriate medical screening examination to determine whether Marco was suffering from an emergency medical condition.

19. St. Vincent's medical records for Sunday September 18, 2022, indicate in several places that Marco was uninsured and was "Self Pay" which was not the case.

20. 42 U.S.C. §1395dd(a) sets out the medical screening requirement that is applicable to the St. Vincent ED as a hospital with an emergency department:

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1)) exists.

21. Subsection (e)(1) defines an emergency medical condition, and provides in relevant part:

> The term "emergency medical condition" means— (A) a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in— (i) placing the health of the individual … in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part[.]

22. An appropriate medical screening examination for Marco that was within the capabilities of St. Vincent and consistent with ED testing done for other individuals presenting with Marco's symptoms would, at the most basic level, have consisted of initial lab work and blood serum testing, neither of which were provided. Diagnostic imaging, including a CT scan and MRI, and a lumbar puncture would be used to confirm and define any critical, life-threatening emergency medical conditions, including encephalitis and meningitis.

23. EMTALA provides that when an individual comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must either provide for such further medical examination and treatment as may be required to stabilize the medical condition or transfer the individual to another medical facility in accordance with 42 U.S.C. §1395dd(c). Since an appropriate medical screening exam was not done, St. Vincent failed to determine that Marco had an emergency medical condition, and Marco was released without his medical condition being stabilized.

24. Because St. Vincent violated the EMTALA requirement for an appropriate emergency medical screening examination, Marco was discharged on Sunday September 18, 2022, without being provided an appropriate emergency medical screening examination to determine whether Marco had an emergency medical condition; without being provided the further medical examination and necessary treatment required to stabilize Marco's medical condition; and without being seen by a doctor. Without doing the required medical screening examination to determine Marco's medical condition, St. Vincent nonetheless charted that Marco had no emergency medical condition.

25. Under EMTALA, a hospital that violates a requirement of 42 U.S.C. §1395dd, including the requirement for a hospital to provide an appropriate medical screening examination, is in violation of EMTALA and is subject to a civil money penalty (in addition to those damages available for personal injury under Indiana law) of not more than $50,000 for each such violation. (*See* EMTALA, Section 1395dd(d)(1)(A).)

26. Under EMTALA, any physician who is responsible for the examination or treatment of an individual in a hospital, including a physician on-call for the care of a patient, who violates a requirement of 42 U.S.C. §1395dd, including the requirement to conduct an adequate emergency medical screening examination, is in violation of EMTALA and is subject to a civil money penalty of not more than $50,000 for each such violation. (*See* EMTALA, Section 1395dd(d)(1)(B).)

**Tuesday September 20, 2022.**

27. Marco returned to the St. Vincent ED on the morning of Tuesday September 20, 2022, and was triage at 9:12 am. The St. Vincent ED charted that Marco had "persistent symptoms of fever, headache and vomiting every day" since September 15, 2022. He had an "abnormal mental status exam" and was admitted to the pediatric floor at 2:37 pm for further evaluation.

28. After a CT scan, an MRI which reflected findings significant for acute multifocal encephalitis, and a subsequent lumbar puncture, Marco was started on empiric treatment for encephalitis consisting of an intravenous (IV) cocktail of antiviral and antibiotic medications.

29. St. Vincent then consulted with Norton Children's Hospital in Louisville, Kentucky ("Norton Children's). Norton Children's requested that Marco be monitored in the St. Vincent Intensive Care Unit until immediate transfer could be arranged to Norton Children's.

30. Marco was transported by an Emergency Medical Flight (helicopter) to Norton Children's where further testing, care and treatment commenced upon his arrival at approximately 11:30 pm on Tuesday September 20, 2022.

**Additional Allegations.**

31. Norton Children's treatment efforts came too late to save Marco, and he was declared brain dead and subsequently pronounced dead on Thursday September 22, 2022.

32. Marco's illness fell under the general umbrella of auto-immune encephalitis, which is treated with steroids to reduce inflammation in the brain. Symptoms of this illness, when presented by a patient in an Emergency Department, are confirmed and more specifically identified by an appropriate medical screening examination. The mortality rate in children with autoimmune encephalitis is low, at approximately 0-3%. Norton Children's first administered the necessary steroid treatments, but these came too late to save Marco's life.

33. St. Vincent proximately caused Marco's death by its failure to provide an appropriate medical screening examination on Sunday September 18, 2022, failing to determine his emergency medical condition, and then failing to stabilize Marco before discharging him on that Sunday. When Marco was eventually transferred late Tuesday night to Norton Children's for further treatment, Marco's chance of recovery was substantially reduced.

34. Had an appropriate medical screening exam been provided by St. Vincent when Marco first presented on Sunday September 18, 2022, Marco could have received immediate treatment to stabilize his condition. Marco would likely have recovered, as do most children with his illness.

35. St. Vincent holds itself out to the public as a provider of emergency medical services including Pediatrics and specialty children's healthcare, and as a regional referral center affiliated with Peyton Manning Children's Hospital, specializing in emergency medicine and pediatric intensive care services. At all times material, St. Vincent held itself out to the public as having qualified physicians and staff to screen and stabilize patients presenting at the St. Vincent ED.

36. The limited examinations of Marco by the medical staff at the St. Vincent ED on September 18, 2022, failed to comport with the guidelines for emergency treatment and with St. Vincent's own policies for determining whether an emergency medical condition exists.

37. On September 18, 2022, Marco was treated differently than pediatric patients presenting to St. Vincent for emergency evaluation and treatment with the same or similar complaints and symptomatic conditions.

38. As a result of the foregoing violations of EMTALA by St. Vincent and its medical staff, Marco, his mother, and his father each suffered personal harm by way of the following:

    a. Marco sustained severe bodily injuries, physical and mental pain and suffering, and an abrupt and untimely death on September 22, 2022;

    b. Marco's mother and father each sustained and continue to undergo severe emotional distress and mental pain and suffering; and

    c.      Marco's mother and father incurred medical, hospital, and related health care expenses, and funeral and burial expenses, on Marco's behalf.

**WHEREFORE**, Plaintiffs, Alan Gabriel La Torre Maradiegue and Luisa Stephany Riquero Nazario, Individually, and as Parents and Next Friend of Marco Gabriel La Torre Riquero, deceased, by counsel, demand judgment against Defendant, St. Mary's Health, Inc. d/b/a Ascension St. Vincent Evansville, for all such damages and relief as are just and proper in the premises.

## REQUEST FOR TRIAL BY JURY

Plaintiffs, by counsel, respectfully requests that all issues set forth herein triable of right by a jury be so tried.

**DATED** this 18th day of January 2023.

                        Respectfully submitted,

                        **BARNETT LAW, LLC**

                        */s/ George C. Barnett, Jr.*
                        _____
                        George C. Barnett, Jr., #3767-82
                        415 SE First Street
                        Evansville, IN  47713
                        Phone:  (812) 437-2006
                        Cell:  (812) 453-9644
                        Fax:  (812) 437-2007
                        georgebarnett@mac.com

and

**CHAPMAN LAW LLC**
Neil Chapman, #17902-71
20 NW 3rd St., Ste 1410
Evansville, IN  47708
Phone:  (812) 426-0600

*Counsel for Plaintiffs*